UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Nicholas Parlin,** *Plaintiff,* v. **Sequium Asset Solutions, LLC,** *and* **Experian Information Solutions, Inc.,** *Defendants.* | Case No: 8:21-cv-1394  **JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Nicholas Parlin**, ("**Mr. Parlin**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Sequium Asset Solutions**, LLC ("**Sequium**") and **Experian Information Solutions, Inc.** ("**Experian**") (jointly "**Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Mr. Parlin against Experian for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**"), and against Sequium only for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction exists pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331, as the Plaintiff is bringing this action under the FCRA and FDCPA, both federal statutes.

3. The Defendants are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

4. Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

5. Mr. Parlin is a natural person residing in the city of Tampa, Hillsborough County, Florida.

6. Mr. Parlin is a *Consumer* as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

7. Experian is an Ohio corporation, with a primary business address of 475 Anton Blvd., Costa Mesa, CA 92626.

8. Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

9. Experian is a *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that it, for monetary fees, regularly engages in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

10. Sequium is a Georgia limited liability company with a primary business address of 1130 Northchase Parkway SE, Suite 150, Marietta, GA 30067.

11. Sequium is registered to conduct business in the state of Florida, where its registered agent is **Registered Agent Solutions, Inc., 155 Office Plaza Dr. Suite A, Tallahassee, FL 32301.**

12. Sequium is licensed as a Consumer Collection Agency ("**CCA**") by the Florida Office of Financial Regulation**.**

13. As a licensed CCA, Sequium knows, or should know, the requirements of the FDCPA.

14. Sequium is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in it uses use an instrumentality of interstate commerce, including postal mail and the internet, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

### The Alleged Debt

15. In or around February 2020, Mr. Parlin allegedly incurred a debt of $2,356 (the "**Debt**") to AT&T Mobility ("**AT&T**") for cellular phone and internet services.

16. The alleged Debt arose from personal cell phone and internet services and therefore meets the definition of *debt* under the FDCPA, 15 U.S.C. §1692a(5).

17. Around September 2020, AT&T assigned, or otherwise transferred the Debt to Credence Resource Management ("**Credence**"), a Texas-based debt collector

18. Credence thereafter began reporting the Debt, monthly, to Experian, beginning in October 2020. **SEE PLAINTIFF'S EXHIBIT A.**

19. Credence reported to Experian that Mr. Parlin owed $2,356, with an original creditor of "ATT MOBILITY" and a Date of First Delinquency ("**DOFD**") of February 2020. *Id.*

20. Credence also reported that the Debt was in collections and the individual responsibility of Mr. Parlin. *Id.*

## Mr. Parlin's Dispute of the Debt

21. On or around December 4, 2020, Mr. Parlin requested and obtained a copy of his consumer credit disclosure from Experian.

22. Mr. Parlin saw the Credence tradeline reporting to his credit and on that day, disputed Credence's reporting of the account.

23. Experian, upon receipt of Mr. Parlin's dispute, sent Credence an Automated Consumer Dispute Verification ("**ACDV**") form through an online platform known as e-OSCAR and asked Credence to make a reasonable investigation into the dispute.

24. Credence thus knew that Mr. Parlin disputed the Debt, at least as early as December 4, 2020.

25. Credence, in response to Mr. Parlin's disputes, responded to the ACDV that the accuracy of the reported information *could not be* verified and thus requested that Experian delete its tradeline. **SEE PLAINTIFF'S EXHIBIT B.**

26. Experian sent Mr. Parlin results of its dispute investigation on or around January 6, 2021, affirming the disputed information concerning the purported debt in collection to AT&T had been deleted.

27. A debt collector who becomes aware a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

## Disputed, Deleted Debt Re-Reported by Sequium

28. On information and belief, Credence thereafter returned the Debt to AT&T, noting that Mr. Parlin disputed the account.

29. AT&T thereafter assigned the Debt to another debt collector – Sequium.

30. On information and belief, AT&T informed Sequium of Mr. Parlin's existing dispute.

31. Alternatively, AT&T failed to communicate the Debt was disputed after having been informed of such from Credence, in contradiction of AT&T's legal obligations under the Florida Consumer Collection Practices Act ("FCCPA").

32. Sequium, in turn, began reporting the Debt monthly to Experian, beginning on April 19, 2021. **SEE PLAINTIFF'S EXHIBIT C.**

33. Sequium reported the same balance, account status, DOFD, original creditor and ECOA code as Credence.

34. The only difference in the data was the "date assigned" for collection, "date of status" of the account being considered "in collection," and the "date first reported."

35. Sequium failed to indicate that the Debt was disputed in its report concerning the Debt. *Id.*

36. Sequium is a large debt collector and receives a considerable number of disputes concerning cell phone debts it reports to CRAs. Sequium knew, when it received a portfolio of charged-off debts for collection from AT&T in March 2021, which included Mr. Parlin's purported Debt, that it was not the first collection agency to be assigned the accounts.

37. Sequium thus knew—or reasonably should have known – a considerable number of the accounts had been previously disputed and had to be reported as such. Sequium had no policies in place to so much as even *ask* creditors like AT&T who place debts for collection with it if the creditor was aware of any prior disputes by the relevant consumers.

38. Assuming, *arguendo*, that AT&T failed to disclose to Sequium the Debt was disputed, reliance on an original creditor's erroneous records is not a defense to an FDCPA action. *See Foster v. Franklin Collection Service,* Civil Action Number 5:17-cv-00008-TES M.D. GA 9-13-2018 (holding that Owen v. I.C. Sys., Inc., 629

F.3d 1263, 1270 (11th Cir. 2011) is binding in the 11th Circuit, which "subjects debt collectors to liability even when violations are not knowing or intentional").

39. When reporting information to nationwide CRAs, like Experian, data furnishers, including Sequium, prepare reports using the Metro 2 language created and maintained by the *Consumer Data Industry Association* ("**CDIA**").

40. Metro 2 contains ten "compliance condition codes" ("**CCCs**") for data furnishers to notate accounts as disputed, previously disputed, and so on.

41. When Sequium re-reported the Debt, it did not report any CCC.

42. The tradeline thus continued to appear on Mr. Parlin's credit report as an "non-disputed" debt.

43. Sequium thus should have reported the Debt with an indication of "account information disputed by consumer," using the CCC code "XB."

44. Sequium's failure to disclose that the Debt was disputed materially damaged Mr. Parlin's credit scores.

45. The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Mr. Parlin suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

### Experian's Failure to Maintain Reasonable Procedures

46. Pursuant to 15 U.S.C. § 1681i(a)(5)(C), Experian was required to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted…."

47. Sequium reported information which had previously been deleted, changing only the "date assigned" for collection, but leaving all other information unchanged.

48. On information and belief, Experian systems are programmed to consider information about a particular debt to be "different" so long as the debt collector reporting the debt is a different entity.

49. The FCRA, however, requires reasonable procedures to prevent the appearance of deleted information. In the instant matter, there was zero material difference in the information reported by Credence and Sequium, other than the name of the debt collector.

50. Had Experian used reasonable procedures, its systems would have flagged this previously-deleted data and blocked it from being reinserted.

51. Additionally, on information and belief, Experian did not verify that the Sequium tradeline it had previously deleted could now be verified as accurate by Sequium, contrary to the requirements of 15 U.S.C. § 1681i(a)(5)(B)(i).

52. Even assuming, *arguendo*, that Experian had obtained the FCRA-mandated verification of accuracy to reinsert the Sequium tradeline into Mr. Parlin's report, it would still be inherently unreasonable to include information from a furnisher of data when that same information, just a month earlier, had been deleted in response to an ACDV, indicating that the information could not be confirmed as accurate.

53. Experian also failed to mail written notice to Mr. Parlin stating that it was reinserting previously-deleted information, disclosing the business name and address of the furnisher of information making such verification, and explaining to Mr. Parlin that he has the right to add a statement disputing the accuracy of the supposed Debt.

54. As a result of the Defendants' actions, disputed unverifiable, previously-deleted information was reinserted into Mr. Parlin's credit report, without the legally-required notice of dispute.

55. Experian's re-insertion of previously deleted information into Mr. Parlin's credit file is the result of flawed procedures that do not flag obviously-identical accounts when reported by two separate data furnishers.

56. Indeed, on information and belief, Experian does not have procedures in place to "flag" identical credit information, such as account balance, DOFD and

original creditor, when reported in separate accounts, and thus Experian regularly re-inserts previously deleted information without notifying the consumer.

### Sequium Reports False 'Date of Status'

57. The "date of status" of a collection account indicates the date an account was first designated to be "in collection." *Cf. Baker v. Capital One Bank*, No. CV 04–1192 PHX–NVW, 2006 WL 2523440, at *4–*5 (D.Ariz. Aug. 29, 2006) ("It would be reasonable for a creditor to interpret the "Date of status" entry to refer to the account's status as a "Collection account," as printed under the entry titled "Status."")

58. Sequium's report indicating a "date of status" of March 2021 thus falsely implies that the account was first referred for collection in March 2021, even though the true date was September 2020.

59. The "date of status" is a key point of data evaluated by many versions of FICO® credit scores, including FICO Model II, used by Experian for mortgage evaluations. The more recent the "date of status," the more adverse the information is factored against the consumer. See *Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707 (S.D. Tex. 2013) "(Plaintiff) has produced evidence to suggest that the FICO credit scoring model affords greater weight to recent delinquencies, and that the 'Aug.2011' 'Date of status' entry on her Experian credit

report could make it appear as though the account became a collection account more recently than it actually did.")

60. Further, "(a)reasonable jury could find that the 'Date of status' entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.,* quoting Sepulvado v. CSC Credit Services, Inc., 158 F.3d 890 (5th Cir. 1998).

61. Experian was aware from Credence's prior reporting that the March 2021 "date of status" was not accurate, as the Debt had been reported with a status of "in collection" at least since September 2020. Nonetheless, Experian accepted Sequium's reporting without question and re-incorporated it into Mr. Parlin's data file and included the tradeline in reports sold concerning him.

62. Mr. Parlin's Experian credit report contains a number of different tradelines. In many of these tradelines, the "Date Opened" indicates the actual date the account was opened with the creditor.

63. Sequium reported to Experian that the AT&T account had a "Date Opened" of March 2021. *Id.*

64. Sequium's reported information is false. Mr. Parlin opened the account with AT&T in 2017.

65. Experian, likewise, was aware Sequium's information was false since it had received a report from Credence concerning the identical debt in September

2020, and thus the collection could not possibly have been "first reported" in March 2021.

66. A reasonable and prudent reader of Mr. Parlin's credit report would infer that an account indicating a balance owed to AT&T reflecting a "Date Opened" of March 2021 means – as the plain language implies – the account was opened with AT&T in March 2021. See *Toliver*, Id. ("Here, there is no language to indicate that 'Date opened' means anything other than the date that the consumer opened the account, as it does for the majority of accounts on (Plaintiff's) credit report…. (A) reasonable jury could find that the "Date opened" entry was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (Internal quotations omitted).

67. Mr. Parlin has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees and / or has assigned his right to attorney fees and costs to the law firm.

### COUNT I
### VIOLATIONS OF THE FCRA—EXPERIAN ONLY

68. Mr. Parlin adopts and incorporates paragraphs 1 – 67 as if fully stated herein.

69. Experian violated 15 U.S.C. § **1681i(a)(5)(B)(i)** when it failed to obtain certification of accuracy of previously-deleted information, specifically, the

disputed Credence tradeline, and reinserted this information into his credit file without verification via the Sequium tradeline.

70. Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2)** when it failed to provide written notice that it was reinserting previously-deleted information into Mr. Parlin's credit file, when it re-inserted the disputed Credence tradeline without notice to Mr. Parlin.

71. Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(I)** when it failed to provide any written notice to Mr. Parlin that it was reinserting previously-deleted information, when it re-inserted the disputed Credence tradeline without notice to Mr. Parlin.

72. Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2)** in that it failed to provide the business name and address of the entity associated with the reinsertion of the previously-deleted information.

73. Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2I)** when it failed to provide written notice that Mr. Parlin had the right to have a statement of dispute included in his file regarding the re-inserted tradeline.

74. Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the re-insertion of previously-deleted tradelines.

75. Experian's policies could reasonably be foreseen to cause harm to Mr. Parlin.

76. Indeed, as a result of Experian's conduct, Mr. Parlin suffered damage to his credit report and scores, as well as emotional distress in having to deal with an account which he thought had been deleted as a result of his dispute.

77. As a result of its conduct, Experian is liable to Mr. Parlin, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Parlin respectfully requests this Honorable Court enter judgment against Experian and for him for:

a. The greater of statutory damages of $1,000.00 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Parlin's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b. Punitive damages for Experian's willful and intentional acts;

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d. Such other relief that this Court deems just and proper

## COUNT II
## VIOLATIONS OF THE FDCPA—SEQUIUM ONLY

78. Mr. Parlin adopts and incorporates paragraphs 1 – 67 as if fully stated herein.

79. Sequium violated **15 U.S.C. § 1692e and 1692e(10)** when Sequium made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, claiming the "status date" of the Debt (e.g., the date which the account became a collection) was March 202, when it was September 2020 or earlier, that the account had been "first reported" as of March 2021, when it had been reported since September 2020 or earlier, and that the Debt was not disputed, when it was disputed.

80. Sequium violated **15 U.S.C. § 1692e(8)** when Sequium communicated credit information known to be false, specifically, the "status date" of the Debt (e.g., the date which the account became a collection) was March 202, when it was September 2020 or earlier, that the account had been "first reported" as of March 2021, when it had been reported since September 2020 or earlier, and that the Debt was not disputed, when it was disputed.

81. Sequium violated **15 U.S.C. § 1692e(8)** when Sequium communicated credit information which was known to be disputed, or which should have been known to be disputed, without disclosure of dispute, in its reports to Experian in April 2021.

82. Sequium violated **15 U.S.C. § 1692e(2)(a)** when Sequium made false and misleading representations about the character, amount and legal status of the Debt when it falsely claimed the "status date" of the Debt (e.g., the date which the account became a collection) was March 2021, when it was September 2020 or earlier, that the account had been "first reported" as of March 2021, when it had been reported since September 2020 or earlier, and that the Debt was not disputed, when it was disputed.

83. Sequium's actions render it liable for the above-stated violations of the FDCPA, and Mr. Parlin is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**WHEREFORE,** Mr. Parlin respectfully requests this Honorable Court enter judgment against Sequium and for him as follows:

a.  Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.  Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.  Such other relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on June 9, 2021, by:

        **SERAPH LEGAL, P.A.**

        */s/ Thomas M. Bonan*
        Thomas M. Bonan, Esq.
        FL Bar Number: 118103
        1614 N. 19th St.
        Tampa, FL 33605
        (813) 321-2347
        Tbonan@SeraphLegal.com
        Counsel for Plaintiff

**EXHIBIT LIST**

A – Excerpt from Consumer's Experian Disclosure Dated 12/4/2020
B – Excerpt from Consumer's Experian Disclosure Dated 01/6/2021
C – Excerpt from Consumer's Experian Disclosure Dated 05/13/2021